IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON JERMELL JAKE,

    Petitioner,                     No. 2:11-cv-0048 MCE DAD P

    vs.

MIKE McDONALD,

    Respondent.                FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on April 25, 2007 in the Sacramento County Superior Court on a charge of raping a person incapable of giving consent.  Petitioner seeks federal habeas relief on the grounds that the trial court violated his rights under the Confrontation Clause by admitting testimony from a hospital nurse about an examination report that was prepared by another nurse who was deceased by the time of petitioner's trial, and that his trial counsel rendered ineffective assistance.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for federal habeas corpus relief be denied.

/////

/////

1

BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Seventy-eight-year-old G. has dementia. In 2003, G.'s niece moved her into a Sacramento board and care home called Manna House, which was owned by defendant's grandmother and run by defendant's mother. Defendant lived at Manna House in his own room and worked there as a patient caregiver.
>
> In January 2006, defendant's mother called G.'s niece and told her G. was "'bleeding from her anus.'" A hospital examination revealed G. was bleeding from two lacerations in her vaginal area. According to one of the nurse practitioners who reviewed G.'s case, the degree of vaginal tearing was "very significant" and suggested a "fair amount of force or significant amount of force." She had not seen this degree of tearing in any of the 1,000 examinations she had conducted and believed that a "normal functioning person" would be unable to tolerate this type of pain.
>
> A police interview of G. proved inconclusive. When a detective tried to speak with G., she would respond with a blank stare and would answer some questions only after long pauses. She did state she knew a "young," "nice gentleman" who was 74 years old named Perry. When the detective asked whether Perry touched her private parts, G. responded, "'did not touch.'" She also responded that Perry "'puts his penis in me when he washes me.'" Police could not find anyone named Perry associated with Manna House.
>
> Defendant's DNA, however, matched DNA from sperm found inside G.'s vagina. Defendant was arrested for raping G. and when arrested told his mother he was sorry for what he had done.
>
> In jail, defendant made telephone calls that were tape recorded by jail personnel. In those telephone conversations, defendant admitted "having sex" with G., believed that the DNA could have come from "nobody else," and explained he "pulled out" before he ejaculated and the sex "kind of tore her."

Doc. No. 25-1 at 1-3.

/////

/////

/////

2

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640

(2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

/////

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v.

/////

/////

1   Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.
2   2003).[2]

3   II. Petitioner's Claims

4       A. Confrontation Clause

5           Petitioner's first claim for federal habeas relief is that the trial court violated his
6   Sixth Amendment right to confront the witnesses against him when it admitted testimony at his
7   trial from a nurse practitioner (nurse Schmidt) about a "sexual assault examination report"
8   pertaining to the victim which was prepared by another nurse practitioner (nurse Tilden). (Doc.
9   No. 21 (Pet.) at 4.)[3]  Petitioner points out that nurse Schmidt did not personally examine the
10  victim, did not observe the examination of the victim conducted by nurse Tilden, nor did she
11  write or sign nurse Tilden's report. (Id.)  He also notes that he had "no prior opportunity" to
12  cross-examine nurse Tilden prior to her death about her report or her findings. (Id.)  Petitioner
13  raised this claim for the first time in his petition for writ of habeas corpus filed in the California
14  Supreme Court. (Resp't's Lod. Doc. 15.)  That petition was summarily denied. (Resp't's Lod.
15  Doc. 16.)

16          Respondent argues that nurse Tilden's report was not "testimonial" in nature; that
17  the trial court did not err in admitting into evidence at petitioner's trial either the examination
18  report or nurse Schmidt's testimony about that report even if it did constitute "testimonial"
19  evidence; and that any error in admitting the report and/or nurse Schmidt's testimony at trial was
20  harmless in light of the other evidence reflected in the record demonstrating petitioner's guilt.
21  (Doc. No. 25 (Answer) at 7.)

22  /////

---

[2] The United States Supreme Court has recently granted certiorari in a case apparently to consider this issue. See Williams v. Cavazos, 646 F.3d 626, 639-41 (9th Cir. 2011), cert. granted in part, ___U.S.___, 132 S. Ct. 1088 (2012).

[3] Nurse Tilden was deceased by the time of petitioner's trial.

6

The state court record reflects that the prosecutor filed a pretrial motion in limine seeking to introduce statements made by the victim to medical personnel who treated her at the U.C. Davis Medical Center emergency room. (Resp't's Lod. Doc. 17, Clerk's Transcript on Appeal (hereinafter CT), at 110-112.) In that motion the prosecution argued that the Sixth Amendment did not bar the receipt into evidence of the statements made by the victim to medical personnel because those statements were not "testimonial," as that term was defined by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), and they were being offered for the non-hearsay purpose of showing the victim's state of mind and mental condition. (Id.) In a written response to this motion, petitioner's trial counsel argued that all statements allegedly made by the victim to medical personnel after the criminal investigation began, and particularly her statements to nurse Tilden and Dr. Dawson, the treating physician at the hospital, were "testimonial" in nature and therefore precluded from admission by the Sixth Amendment. (Id. at 129.) After a hearing on the in limine motion, the trial court granted the prosecutor's motion, allowing the introduction of the victim's statements to nurse Tilden and Dr. Dawson. (Resp't's Lod. Doc. 19, Reporter's Transcript on Appeal (hereinafter RT) at 9-14). In so ruling, the state trial judge reasoned that the victim's statements were not offered "for the truth of the matter asserted," but to demonstrate the victim's "mental condition," or "state of mind." (Id.)

While the focus of the prosecutor's motion in limine was the victim's actual statements to medical personnel, the claim presented by petitioner in the instant habeas petition focuses upon nurse Schmidt's trial testimony regarding the results of the medical examination of the victim conducted by nurse Tilden as well as nurse Schmidt's testimony regarding the extent of the victim's injuries. At petitioner's trial, Leslie Schmidt, a nurse practitioner at U.C. Davis Medical Center, testified that she was asked to review the medical report concerning the examination of the victim prepared by nurse Elizabeth Tilden and "to conduct [her] own independent review based on the photographic evidence." (Id. 418.) Nurse Schmidt provided testimony describing the form filled out by nurse Tilden with respect to her gynecological

7

1  examination of the victim at the U.C. Davis emergency room.  (Id. at 421-22, 424- 43.)  The form
2  itself was also admitted into evidence at petitioner's trial as People's Exhibit 16.  (CT at 162; RT
3  at 422, 571.)  It was established through the testimony of nurse Schmidt that this form was used
4  to "standardize the way in which sexual assault examinations are performed on persons age
5  fourteen and over" and that it was kept by U.C. Davis "in the ordinary course of business."  (RT
6  at 421, 424.)  During questioning by the prosecutor, the form was put on "the visualizer" for
7  display to the jury.  (Id. at 425.)  Petitioner's trial counsel objected to the jury being exposed to
8  the section of the form filled out by law enforcement, but did not otherwise object to nurse
9  Schmidt's testimony about the form having been filled out by nurse Tilden.  (Id.)

10         Nurse Schmidt testified that nurse Tilden was unable to obtain a "history" from
11  the victim because the victim suffered from dementia.  (Id. at 427.)  She also testified that the
12  form filled out by nurse Tilden reflected that the victim reported pain in her vaginal area and that
13  the victim had a "significant tear . . . to the bottom end of the vaginal opening" which required
14  surgical repair.  (Id. at 428-29.)  From her own review of the photographic evidence, nurse
15  Schmidt testified that the injury to the victim's vaginal area was "very significant and would
16  suggest a fair amount of force or significant amount of force in which to cause that amount of
17  pulling apart of tissues."  (Id. at 430-31, 432.)  Nurse Schmidt stated that she had seen "this type
18  of tear" only once in the over one thousand medical examinations that she had conducted.  (Id. at
19  433.)  She also testified that, based on her review of the evidence, a "normal functioning person"
20  would not be able to tolerate the pain caused by such tearing to the victim's vaginal area unless
21  she was "under the influence of some sort of drugs or alcohol."  (Id. at 442-43.)  Finally, nurse
22  Schmidt testified that nurse Tilden collected vaginal swabs from the victim which were
23  processed for analysis by the Sacramento County Crime Lab.  (Id. at 436-38.)[4]
24  /////

---

[4] Analysis of those lab reports showed that petitioner's DNA was a direct match to the vaginal swabs taken from the victim.  (Id. at 515-24.)

8

1         Dr. Lindsey Dawson, a resident physician at U.C. Davis Medical Center, testified
2 at petitioner's trial that she received a call from nurse Tilden to treat the victim. (Id. at 348-49.)
3 Dr. Dawson testified as follows. Nurse Tilden informed her that "they had possible sexual
4 assault victim who needed – who had a laceration in her vagina that needed to be repaired." (Id.
5 at 349.) Dr. Dawson had an independent memory of this event because "there is not typically
6 lacerations that need to be repaired in a sexual assault victim," and because the victim "was an
7 older woman so that also was memorable." (Id.) Dr. Dawson was unable to obtain a history
8 from the victim as to how she had sustained her injuries. (Id. at 350.) However, her examination
9 of the victim revealed two lacerations to the victim's vagina. (Id. at 352-53.) One of those
10 lacerations was a "second degree tear" between three and four centimeters long that required
11 surgical repair. (Id. at 353-55.) Both lacerations were still actively bleeding. (Id. at 353.) Dr.
12 Dawson did not have an opinion as to how fresh the victim's injuries were. (Id. at 358.) After
13 Dr. Dawson finished repairing the laceration, she left the emergency room. (Id. at 358.)

14         The Sixth Amendment to the United States Constitution grants a criminal
15 defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI.
16 "The 'main and essential purpose of confrontation is to secure for the opponent the opportunity
17 of cross-examination.'" Fenenbock v. Director of Corrections for California, 681 F.3d 968, 976
18 (9th Cir. 2012) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986)).

19         In 2004, the United States Supreme Court held that the Confrontation Clause bars
20 the state from introducing into evidence out-of-court statements which are "testimonial" in nature
21 unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the
22 witness, regardless of whether such statements are deemed reliable. Crawford v. Washington,
23 /////
24 /////
25 /////
26 /////

541 U.S. 36 (2004).[5] The Crawford rule applies only to hearsay statements that are "testimonial" and does not bar the admission of non-testimonial hearsay statements. Id. at 42, 51, 68. See also Whorton v. Bockting, 549 U.S. 406, 420 (2007) ("the Confrontation Clause has no application to" an "out-of-court nontestimonial statement.")  Although the Supreme Court in Crawford declined to provide a comprehensive definition of the term "testimonial," the court did recognize that "[s]tatements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." Crawford, 541 U.S. at 52.  The court also provided the following "formulations" of a "core class" of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51-52.

        The court in Crawford also pointed out that the Sixth Amendment Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59, n.9. Moreover, the Supreme Court has acknowledged that "Under settled evidence law, an expert may express an opinion that is based on facts that the experts assumes, but does not know, to be true" and that this form of testimony "does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted." Williams v. Illinois, ___ U.S. ___,

---

[5] The Crawford decision applies to this case because that decision was rendered prior to petitioner's appeal. Whorton v. Bockting, 549 U.S. 406, 416 (2007) (A new rule, such as that announced in Crawford, "is generally only applicable to cases that are still on direct review.") Winzer v. Hall, 494 F.3d 1192, 1194 (9th Cir. 2007) (Crawford did not apply "because it was decided after [petitioner's] trial and appeal.")

132 S. Ct. 2221, 2228 (2012).  See also Benjamin v. Harrington, No. CV 11-2899-JVS (SH), 2012 WL 3248256, at *5-12 (C.D. Cal. June 27, 2012) (denying federal habeas relief in light of the Williams decision where the petitioner claimed his Confrontation Clause rights were violated when DNA testing was admitted into evidence at his trial and an expert, rather than the analyst who prepared the reports, was allowed to testify regarding the reports and their interpretation)

In addition, Confrontation Clause violations are subject to harmless error analysis. Whelchel v. Washington, 232 F.3d 1197, 1205-06 (9th Cir. 2000).  "In the context of habeas petitions, the standard of review is whether a given error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  Christian v. Rhode, 41 F.3d 461, 468 (9th Cir. 1994) (quoting Brecht, 507 U.S. at 637).  Factors to be considered when assessing whether a Confrontation Clause violation is harmless error include the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case.  Van Arsdall, 475 U.S. at 684[6]; United States v. Norwood, 603 F.3d 1063, 1068-69 (9th Cir. 2010).[7]

---

[6] Although Van Arsdall involved a direct appeal and not a federal habeas action, "there is nothing in the opinion or logic of Van Arsdall that limits the use of these factors to direct review."  Whelchel, 232 F.3d at 1206.

[7] In his traverse, petitioner relies on Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), in support of his Sixth Amendment claim.  (Doc. No. 26 at 6.)  In Melendez-Diaz the Supreme Court held that "certificates of analysis" verifying the identity of a contraband chemical substance were testimonial under Crawford and were therefore inadmissible unless the affiant testified at trial or was unavailable but had earlier been available for cross-examination. Petitioner argues that the report generated by nurse Tilden was "testimonial" and that nurse Schmidt's testimony regarding that report was therefore inadmissible under the holding in Melendez-Diaz.  (Id. at 6-8.)  However, Melendez-Diaz was decided after the California Court of Appeal affirmed petitioner's judgment of conviction and therefore does not constitute "clearly established Federal law" for purposes of this court's AEDPA review.  See Meras v. Sisto, 676 F.3d 1184, 1187-88 (9th Cir. 2012).  As such, it has no bearing on petitioner's Sixth Amendment claim contained in the instant federal habeas petition.  This is true even though, as petitioner argues, Melendez-Diaz may be retroactive under Teague v. Lane, 489 U.S. 288 (1989).  Id. Moreover, in Williams the Supreme Court distinguished the decision in Melendez-Diaz, pointing out that the certificates at issue in the latter case "were executed under oath before a notary and "were created for 'the sole purpose of providing evidence against a defendant.'"  Williams, 132

11

Even assuming arguendo that the trial court violated petitioner's rights under the Confrontation Clause in admitting the testimony of nurse Schmidt in which she addressed nurse Tilden's examination report, any such error was harmless. Evidence independent of nurse Tilden's report and the testimony of nurse Schmidt reflected that the victim was taken to the emergency room where Dr. Dawson, a resident physician, was informed by the attending nurse that injuries to the vagina of a possible sexual assault victim required surgical repair. After examining the victim herself, Dr. Dawson observed two tears, one of which was significant enough to require sutures. The testimony of Dr. Dawson was essentially identical to the bulk of the testimony given by nurse Schmidt and provided independent evidence of the nature and extent of the serious injuries sustained by the victim in this case. Thus, the information contained in nurse Tilden's examination report, as reported by nurse Schmidt in her trial testimony, was not the sole evidence of these facts. Furthermore, the evidence that petitioner committed this crime, independent of the information set forth in nurse Tilden's examination report, was overwhelming. Petitioner confessed to the crime in detail during two separate telephone conversations with two different persons while he was being held in jail. (CT at 231-36; RT at 462-64; Resp't's Lod. Doc. 18 (Clerk's Supplemental Transcript on Appeal) at 14, 20.) He also told his mother, immediately after he was arrested, that he was sorry for what he had done and that "guys he knew usually got fifteen years [in prison] for the same thing." (RT at 50.) Under these circumstances, the admission of nurse Schmidt's testimony concerning nurse Tilden's examination report did not have a substantial and injurious effect or influence on the verdict rendered in this case. On the basis of all the remaining evidence introduced at petitioner's trial, this court is convinced that the jury would have convicted petitioner of the rape regardless of the admission of the challenged testimony.

---

S. Ct. at 2232 (quoting <u>Melendez-Diaz</u>, 557 U.S. at 323). Finally and in any event as discussed herein, even assuming arguendo that the trial court's admission of nurse Schmidt's testimony violated petitioner's Sixth Amendment Confrontation Clause rights, any such error was harmless.

1  In his traverse, petitioner argues that although he confessed to the crime during his
2 jail telephone conversations, such evidence alone is insufficient to support his conviction for
3 rape. (Traverse at 22.) He argues that "state law requires the prosecution to prove the corpus
4 delicti, or the body of the crime itself – i.e., the fact of injury, loss, or harm, and the existence of
5 a criminal agency as its cause and cannot do so by relying exclusively on statements of the
6 defendant." (Id.)

7  A crime's corpus delicti (that is, the body or elements of the crime) consists of (1)
8 a loss, injury or harm, and (2) a criminal agency as its cause. People v. Jennings, 53 Cal.3d 334,
9 364 (1991). Proof of the corpus delicti does not require proof of the identity of the perpetrators;
10 that is, it is not necessary that it connect the defendant with the commission of the crime. People
11 v. Cullen, 37 Cal.2d 614, 624 (1951). Proof of the corpus delicti requires only proof that a crime
12 has occurred. The prosecution may establish the corpus delicti by circumstantial evidence, and
13 need only establish the corpus delicti by a slight or prima facie showing. Jennings, 53 Cal.3d at
14 364. California's "corpus delecti" rule is addressed in CALCRIM 359, which instructs the jury
15 that there must be some proof of the crime independent of the defendant's extrajudicial
16 admissions. Specifically, that instruction provides as follows:

> The defendant may not be convicted of any crime based on his out-of-court statements alone. You may only rely on the defendant's out-of-court statements to convict him if you conclude that other evidence shows that the charged crime was committed. [¶] That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. [¶] The identity of the person who committed the crime may be proved by the defendant's statements alone.

22 This was the instruction that the jury at petitioner's trial received. (CT at 171.) The corpus
23 delicti instruction was originally required "to ensure 'that the accused is not admitting to a crime
24 that never occurred.'" Id. at 368. "Today's judicial retention of the rule reflects the continued
25 fear that confessions may be the result of either improper police activity or the mental instability
26 of the accused, and the recognition that juries are likely to accept confessions uncritically." Jones

v. Superior Court, 96 Cal. App. 3d 390, 397 (1979).[8]  Here, it is obvious that there was abundant evidence, separate and apart from petitioner's recorded jail telephone conversations in which he confessed, introduced at petitioner's trial that a crime has occurred.  Moreover, the jury was properly instructed regarding the prosecution's burden of proving the corpus delicti.  There was no error at petitioner's trial in this regard.

        The California Court of Appeal's decision rejecting petitioner's Sixth Amendment claim on appeal was not contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled to federal habeas relief with respect to that claim.

        B.   Ineffective Assistance of Counsel

        In his second claim for federal habeas relief, petitioner argues that his trial counsel rendered ineffective assistance in failing to object to the trial testimony of nurse Schmidt on Sixth Amendment grounds.  (Pet. at 4; Traverse at 3.)  The last reasoned state court decision addressing this claim is the opinion by the Sacramento County Superior Court on petitioner's second habeas petition filed in that court.  (Resp't's Lod. Doc. 10.)  Relying on state law, that court concluded:

> The holdings in [People v.] Geier and [People v.] Gutierrez, support the conclusion that the contemporaneous observations of nurse Tilden found in the exam report of victim G. were not testimonial so they were not excludable on confrontation clause grounds.  Moreover, those observations were fully available to nurse Schmidt to render her expert opinions.  Thus, Petitioner's trial counsel was not ineffective for failing to object to that testimony on Sixth Amendment grounds.

/////

---

[8] Likewise, under federal law, the admissions or confessions of a criminal defendant that are obtained subsequent to the completion of a criminal act must be corroborated by some independent evidence to insure the reliability of the statements.  Opper v. United States, 348 U.S. 84, 90 (1954).  Although petitioner does not challenge the sufficiency of the evidence to support his conviction in the instant petition, there was clearly sufficient evidence introduced at his trial to corroborate petitioner's confession, even without the testimony of nurse Schmidt.  Of course, to the extent it could be argued that the standard with respect to the sufficiency of such independent evidence under California law is more stringent, it is not controlling upon collateral review by a federal habeas court which does not extend to errors under state law.  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).

> The only potential "testimonial" evidence that came from the exam report of nurse Tilden through the testimony of nurse Schmidt was the recordation of victim G.'s statement about where she felt pain. To the extent this evidence was inadmissible as testimonial, which the court does not find, its admission was clearly harmless and without prejudice to the petitioner. The photographs of victim G's injuries, coupled with the expert testimony of nurse Schmidt as to the degree of pain a normal human would expect to experience from such injuries, was more than enough to dwarf this arguably "testimonial" evidence. Moreover, whether the victim experienced pain from the injuries was not elemental to the crime for which Petitioner was convicted, and its overall relevance is not easily discerned from the record. Thus, the Petitioner has shown no prejudice from its admission.

((Resp't's Lod. Doc. 10 at 9-10.)

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an

/////

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

Here, petitioner has failed to demonstrate prejudice with respect to his ineffective assistance of counsel claim. Even if petitioner's trial counsel had successfully objected to the introduction of nurse Schmidt's testimony on Sixth Amendment grounds[9], there is no reasonable probability that the result of petitioner's trial would have been different. As discussed above, the other evidence of petitioner's guilt introduced at his trial, even absent the testimony of nurse Schmidt which was based on nurse Tilden's examination report, was overwhelming. Accordingly, petitioner is not entitled to federal habeas relief with respect to his ineffective assistance of counsel claim.

## CONCLUSION

For all the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules

/////

---

[9] It appears clear that any such objection would have properly been overruled in light of the Confrontation Clause analysis undertaken above.

Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: September 5, 2012.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
jake48.hc